IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Teresa L. Hatfield,              :

        Plaintiff,              :

    v.                         :     Case No. 2:06-cv-1073

Commissioner of Social Security,:    JUDGE FROST

        Defendant.             :

<u>REPORT AND RECOMMENDATION</u>

        Plaintiff, Teresa L. Hatfield, filed this action seeking
review of a final decision of the Commissioner of Social Security
("Commissioner") denying her application for supplemental
security income benefits.  That application, which was filed on
September 6, 2002, alleged that plaintiff became disabled on
November 1, 1991, as a result of multiple medical disorders.

        After initial administrative denials of her claim, plaintiff
was afforded a hearing before an Administrative Law Judge on
October 11, 2005.  In a decision dated May 24, 2006, the
Administrative Law Judge denied benefits.  That decision became
the final decision of the Commissioner when the Appeals Council
denied review on October 27, 2006.

        Plaintiff thereafter timely commenced this civil action.
The record of administrative proceedings was filed in this Court
on March 5, 2007.  Plaintiff filed a statement of errors on May
21, 2007, to which the Commissioner responded on July 20, 2007.
No reply brief has been filed, and the matter is now ripe for
decision.

        Plaintiff's testimony at the administrative hearing revealed

1

the following.  Plaintiff, who was 41 years old on the date of
the hearing, has a high school education.  (Tr. 399).  She
testified that she was a recovering alcoholic who had also had
some problems with cocaine usage in the past, but she had both
stopped drinking and using drugs long before the administrative
hearing.  (Tr. 402-03).

Plaintiff's last job was as a cashier at a Lowe's store.
The job required her to be on her feet all day and she could lift
up to 20 pounds.  (Tr. 405-06).  The job was difficult for her to
do because of the stress of dealing with the public.  (Tr. 406).
She also worked at a factory for a few months and as a bartender.
(Tr. 406-07).  Finally, she worked in a grocery store bakery.
(Tr. 407).

Plaintiff testified that the primary problems preventing her
from working were migraine headaches and difficulty in being
around people.  (Tr. 408).  She believed the headaches stemmed
from a head injury she received in 1991.  (Tr. 410).  The problem
had become worse in the last two years.  Id.  In addition, she
has arthritis in her hip from an injury suffered in the accident
and she has been nervous around people.  (Tr. 410-11).  She also
has problems with short term memory.  (Tr. 411).

Plaintiff testified that her hip problem makes it difficult
for her to stand for any length of time.  She also has difficulty
walking and sitting, although she can sit for about an hour at a
time.  (Tr. 413).  She cannot lift more than 20 pounds.  (Tr.
413-14).  She also suffers from depression and takes anti-
depressant medication.  (Tr. 415-16).  In a typical day,
plaintiff gets her son ready for school, goes back to bed for
several hours, and then assists her mother with cleaning house
and doing laundry.  (Tr. 417).  Finally, she described her energy
level as low and testified that she has crying spells on a daily
basis.  (Tr. 421).

2

Pertinent medical records reveal the following.  Plaintiff was treated at Grant Hospital after being involved in a motor vehicle accident in 1991.  She had head injuries and a broken jaw as well as facial lacerations.  She also had some pain in her right hip.  She improved during her hospitalization and was discharged with instructions to take Advil for pain and to see her doctor after discharge.  (Tr. 149-53).  She had follow-up surgery on her jaw in 1992.  (Tr. 158-59).

In 2001, plaintiff underwent physical therapy based upon her complaints of headaches and neck pain.  Her therapy was completed within a month and the discharge note indicated that she reported 80 percent improvement in her symptoms.  (Tr. 163-68).

Plaintiff was seen at the Adena Regional Medical Center in Chillicothe, Ohio on October 30, 2001.  She reported persistent problems of mood irritability, depression, and short term memory loss since her motor vehicle accident.  She also reported fleeting suicidal thoughts.  Examination revealed an impaired short term memory as well as poor attention and concentration most likely due to her closed head injury.  The diagnostic impressions included major depressive disorder as well as status post severe closed head injury with residual headaches and poor short term memory.  Her GAF was rated at 55.  Her medication was increased and she was discharged with a plan to continue counseling.  (Tr. 169-71).

Also during 2001, plaintiff was being treated by Dr. Taylor for her migraine headaches.  Precipitating factors for her headaches included musculoskeletal dysfunction, occipital neuralgia, a sleep disorder, anxiety, and caffeine and nicotine overuse.  Dr. Taylor saw her on July 17, 2001, at which time she reported more severe headaches, and he referred her to physical therapy.  By July 27, 2001, she was doing well and was to be seen on an as-needed basis after that.  She was improved by September

3

11, 2001, although she was still having two severe headaches per month.  She was given Imitrex, which gave her good relief from migraines.  (Tr. 180-188).

Plaintiff was examined for low back pain on March 18, 2002. The report at that time was that she suffered from degenerative changes of both the thoracic and lumbar spine, but they were described as mild.  (Tr. 189-93).

Plaintiff underwent in-patient treatment for abuse of Valium and Darvocet beginning on May 13, 2002.  She was discharged after undergoing detoxification.  (Tr. 201-11).

Dr. Shiflett, plaintiff's mental health care provider at the time, responded to a Bureau of Disability questionnaire on September 24, 2002.  He reported having seen plaintiff for only a short period of time in 2001.  At that time, she suffered from major depression and a panic disorder.  She was treated with medication management and psychotherapy.  Her response to treatment was poor.  (Tr. 225-27).  Dr. McGlone responded to a similar questionnaire indicating that he was treating plaintiff for major depression and that she has always presented with a severely depressed mood with a flat affect, poor communication, and poor insight.  He thought that she showed poor response to therapy for depression but that her anxiety and chronic headaches were controlled.  He believed that she had no ability to concentrate or think and that her interaction with others was strained.  Although she was able to follow instructions, her ability to function independently was poor.  (Tr. 239-41).

Plaintiff was seen by Dr. Hamill at the Scioto Paint Valley Mental Health Center during 2002.  He believed she was suffering from a mixed bipolar state with psychotic features as well as anxiety.  On May 24, 2002, she described auditory and visual hallucinations as well as suicidal thoughts.  She also described irritability, insomnia, racing thoughts, anger, and mood swings.

4

By June 28, 2002 she was feeling better but had recently been
placed on medication for panic attacks.  By September 24, 2002,
she was denying any psychotic symptoms but also was having
difficulties in her marriage.  Her situation was essentially
unchanged by November 5, 2002.  (Tr. 242-52).  Dr. Hamill also
completed a mental functional capacity assessment indicating that
plaintiff was markedly limited in her ability to understand,
remember, and carry out detailed instructions, and was extremely
limited in her ability to maintain attention and concentration
for extended periods, maintain regular attendance and
punctuality, and complete a normal work day and work week without
interruptions from psychologically-based symptoms and to perform
at a consistent pace. (Tr. 253-54).

Plaintiff underwent a psychological evaluation by Dr.
Tanley, a psychologist and neuropsychologist, on December 6,
2002.  She described mental problems including poor memory as
well as arthritis in her hip and migraine headaches.  She told
Dr. Tanley she stopped working at Lowe's because she became
pregnant.  Her affect was flat and her eye contact was poor.  A
sense of hopelessness, helplessness, and worthlessness pervaded
her speech.  Test results placed her in the borderline range of
intelligence.  The MMPI-II was administered but was invalid,
although Dr. Tanley did not believe that it was from conscious
over-reporting of symptoms.  He thought that her ability to
relate to others was mildly impaired, as was her ability to
understand and follow simple instructions and to perform simple,
repetitive tasks.  She had a moderate impairment in her ability
to withstand the stress and pressure of daily work.  He rated her
GAF at 50.  (Tr. 255-58).

The record contains progress notes from plaintiff's visits
to the Chillicothe Family Physicians from 2000 to 2002.  They
generally indicated that she was being treated for depression and

that her mood varied from visit to visit.  (Tr. 260-287).

On January 23, 2003, Dr. McGlone completed a physical residual functional capacity form.  He indicated that plaintiff had no difficulty in standing, walking, or sitting.  She could lift and carry six to ten pounds frequently and up to 20 pounds occasionally.  She was moderately limited in her ability to bend. Dr. McGlone thought that she was unemployable, presumably because of her psychological problems.  (Tr. 288-90).

Plaintiff's records were reviewed by Dr. Williams, a psychologist, who concluded that plaintiff suffered from an affective disorder which she described as bipolar disorder in partial remission.  She thought that plaintiff had moderate limitations in her ability to maintain social functioning, concentration, persistence or pace, showed a moderate restriction in her activities of daily living, and experienced one or two episodes of decompensation in a work-like setting.  Dr. Williams thought that plaintiff also had a marked limitation in her ability to interact with the general public.  (Tr. 291-97).

The record also contains additional documents from Dr. Hamill, plaintiff's treating psychiatrist.  Two office notes dated December 26, 2002 and February 20, 2003 indicate that although plaintiff was having more anxiety at the earlier appointment, she was doing better with medications at the latter one.  At the latter appointment, Dr. Hamill described her diagnoses as including bipolar disorder, depressed, in remission, a generalized anxiety disorder, and an adjustment disorder with depressed and anxious mood.  He also completed a Psychiatric Review Technique Form indicating that plaintiff had generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning.  In addition, he repeated his earlier conclusion that she suffered from marked difficulties in maintaining social

6

functioning and extreme difficulties in maintaining
concentration, persistence or pace.  He also thought that she had
poor or no ability to function in a large number of areas
relating to occupational adjustments.  (Tr. 298-309).  Her
counselor at Scioto Paint Valley Mental Health Center also filled
out a questionnaire indicating, among other things, that
plaintiff is easily distracted and anxious, that she has a high
need for rest, and that she does not handle stress well at all
and will either become anxious or withdraw.  (Tr. 310-14).

On May 2, 2003, Dr. Semmelman, a psychologist, reviewed the
prior assessment of plaintiff's records done by Dr. Williams.
According to Dr. Semmelman, plaintiff's main problem was her
addiction to Benzodiazepines and opiates and that she "appears to
be drug seeking."  Dr. Semmelman thought that some of plaintiff's
symptoms and complaints were due to use and abuse of these
medications and to withdrawal.  She questioned whether
plaintiff's mood could accurately be assessed given her abuse of
medication.  She also believed that plaintiff's ability to do
puzzles and watch television showed that she was able to
concentrate and attend.  Consequently, it appeared to be Dr.
Semmelman's opinion that plaintiff was able to do at least simple
tasks on a repetitive basis as long as she had no significant
contact with the public, which was the conclusion reached by Dr.
Williams.  (Tr. 315).

Plaintiff was evaluated from a physical standpoint by Dr.
Johnson on June 17, 2003.  She described her chief physical
complaint as arthritis.  She showed some loss of motion in the
hips but the examination was otherwise essentially normal.  Dr.
Johnson's impression was morbid obesity and pain just to the
right of the lumbar spine of uncertain etiology.  Dr. Johnson
thought that plaintiff could perform work-related physical
activities on a sustained basis but did not make any comment

7

about disability secondary to her underlying mental status.  (Tr. 316-19).

Plaintiff continued to see Dr. Hamill at least through May 27, 2005.  His office notes for a two-year period beginning in May, 2003 reflects that plaintiff's depression varied in severity from visit to visit.  Her generalized anxiety disorder continued relatively unabated.  On the last visit, she still described anxiety and panic attacks.  Dr. Hamill did comment that her use of one of the drugs referred to in Dr. Semmelman's report, Librium, a benzodiazepine, was appropriate because she was using it only as prescribed and because it was helping her to function. (Tr. 345-52, 384-85).

On September 1, 2005, plaintiff consulted Dr. Shiflett for a psychiatric evaluation due to her depression and anxiety.  She reported chronic mood dysphoria as well as difficulties with attention, concentration, and motivation.  She also had intermittent anxiety attacks.  She appeared tearful and her affect was constricted.  Her attention and concentration were impaired as was her short term memory.  His diagnostic impression was mood disorder and major depressive disorder versus bipolar mood disorder as well as a panic disorder.  He rated her GAF at 55 and planned to initiate psychotherapy.  He also changed her medications.  (Tr. 388-90).

A medical examiner, Dr. Nusbaum, testified at the administrative hearing.  He noted that the records indicated a significant length of treatment for headaches, osteoarthritis of mild severity in the left hip, and a history of depression and treatment for depression since 2001.  His background did not permit him to render an expert opinion on psychological issues. He did not believe that either the hip problem or the problem with headaches were of themselves disabling but they would limit plaintiff to essentially light work or a limited range of medium

work. She also should not climb ladders or work around
unprotected heights or hazardous machinery. He noted at the
beginning of his testimony that there was an indication in the
record of short term memory difficulties but that there was not
substantial documentation of this problem. (Tr. 423-28).

Finally, a vocational expert also testified at the
administrative hearing. The expert, Mr. Rosenthal, described
most of plaintiff's past work as performed at the light
exertional level. The jobs were either semi-skilled or
unskilled. (Tr. 433). The only exception was the factory job,
which was performed at the medium level and was unskilled. (Tr.
434). The only transferable skill she had was for cashiering
work, which could also be done at the sedentary level. (Tr.
435). With the physical limitations described by Mr. Nusbaum,
plaintiff could perform her earlier jobs as bartender and bakery
helper. Id. There were also a number of other jobs she could
perform with those limitations. If she also had the
psychological limitations indicated by Dr. Tanley, she could
still work as a baker's helper and also could do a number of
other unskilled jobs. (Tr. 436-37). If, however, plaintiff were
as limited as described by Dr. Hamill, she could not work. (Tr.
441).

Based upon the above evidence, the Commissioner concluded
that plaintiff suffered from severe impairments including status
post closed head injury with fractured mandible and malunion,
mild osteoarthritis of the left hip, morbid obesity, migraine
headaches, Percocet headaches, adjustment disorder with depressed
mood, borderline intelligence, and remote history of alcohol and
cocaine abuse. The Commissioner further found that plaintiff had
the residual functional capacity to lift 15 pounds frequently and
35 pounds occasionally but could not climb ladders, ropes or
scaffolds or work around hazardous machinery. Further, plaintiff

9

was found to be mildly impaired in her ability to relate to others and moderately impaired in her ability to withstand work stress.  Although she could not perform any of her past work, she could perform those jobs described by the vocational expert and therefore was not under a disability.  Recognizing that Dr. Hamill had expressed an opinion to the contrary, the Commissioner rejected his opinion as "inconsistent with the greater weight of the evidence."  In particular, the Commissioner noted:

> This doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in the decision, good reasons exist for questioning the reliability of the claimant's subjective complaints.  The totality of the medical evidence clearly supports that the claimant is not as severely limited as assessed by this doctor.

(Tr. 19).  In assessing plaintiff's credibility, the Commissioner noted only that, at least in the Commissioner's view, plaintiff's treatment "has been non-aggressive and conservative in nature," that she "was able to attend the hearing proceedings closely and fully without any noted distractions or overt pain behavior," and that her description of daily activities was inconsistent with her allegations of disability because she was able to get her son ready for school, could perform some light household chores, was unable to read due to memory problems, and visited with a friend once every six months.  (Tr. 20).

In her Statement of Errors, plaintiff raises a single issue.  She contends that the Commissioner erred in rejecting the opinions of her treating physicians concerning the extent of her disability.  She contends both that the Commissioner did

not properly assess the treating source's opinion or give sufficient reasons for rejecting it, and that the only conclusion which can be reached on this record is that such opinion should be given controlling weight. The question before the Court is whether the Commissioner's decision is supported by substantial evidence.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical

11

advisor or a physician who saw plaintiff only once.  <u>Lashley v. Secretary of H.H.S.</u>, 708 F.2d 1048, 1054 (6th Cir. 1983); <u>Estes v. Harris</u>, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial.  <u>Cornett v. Califano</u>, [Jan. 1980 - Sept. 1980 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶16,622 (S.D. Ohio Feb. 7, 1979).

A physician's statement that plaintiff is disabled is not determinative of the ultimate issue.  The weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. §404.1527; <u>Harris v. Heckler</u>, 756 F.2d 431 (6th Cir. 1985).  In evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  <u>Moon v. Sullivan</u>, 923 F.2d 1175 (6th Cir. 1990); <u>Loy v. Secretary of HHS</u>, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  <u>Cutlip v. Secretary of HHS</u>, 25 F.3d 284 (6th Cir. 1994).

If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference.  <u>Harris</u>, 756 F.2d at 435.  The Commissioner may have expertise in some matters, but cannot supplant the medical expert.  <u>Hall v. Celebrezze</u>, 314 F.2d 686, 690 (6th Cir. 1963).  The "treating physician" rule does not apply to a one-time examining medical provider, and the same weight need not be given to such an opinion even if it favors the claimant.  <u>Barker v. Shalala</u>, 40 F.3d 789 (6th Cir. 1994) (per curiam).

As explained in <u>Rogers v. Comm'r of Social Security</u>,

12

486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule." Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight. Two reasons underlie this procedural requirement. First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled. Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way. Id.

Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record. Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." Id. at 243, citing Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the Court agrees that the Commissioner failed to articulate sufficient reasons for disregarding the opinion of Dr. Hamill. Dr. Hamill is a long-time treating psychiatrist who clearly had the best opportunity to observe plaintiff on a longitudinal basis and to assess whether her symptoms were real or imaginary. The record indicates that he did not simply manage medications but also met with her for significant lengths of time and discussed the various stressors in her life and her reaction to them. There is no indication that, by

13

administering any testing instruments, he would have been in any better position to evaluate her condition than by relying upon the results of their sessions.  In fact, as plaintiff points out, that is a standard way for a mental health professional to evaluate both the existence and severity of any mental health issues experienced by persons seeking treatment. Consequently, to disregard his opinion simply because he relied to a great extent on the plaintiff's own report of symptomatology is not, by itself, a sufficiently well-articulated reason to permit his opinion to be rejected.

This conclusion is reinforced by the way in which the Commissioner apparently concluded that Dr. Hamill should not have relied on plaintiff's own report of symptoms.  The Commissioner indicated that she was not a credible source because of the inconsistencies between her testimony and two other pieces of evidence.  The first was plaintiff's ability to sit through and react appropriately at the administrative hearing.  That, however, is simply an invalid basis for concluding that, contrary to the observations of the treating professionals, she did not have severe mental health symptoms. Second, the Commissioner concluded that plaintiff's activities of daily living were inconsistent with the report of severe mental health symptoms.  However, plaintiff testified that she is withdrawn from the public, including her own parents, that she sleeps for a significant period of time during the day, and that she does nothing more than a few light household chores. The Commissioner apparently credited her testimony that she is unable to do any significant reading due to memory deficits and that her social interactions are limited to visiting a friend once every six months.  It is difficult to see how these activities are inconsistent with the way in which she described her psychological symptoms either at the administrative hearing

14

or to Dr. Hamill.  Consequently, the fact that the Commissioner
believed that plaintiff's testimony was somewhat less than
credible is an inadequate basis upon which to conclude that her
consistent reports of psychological symptoms, made to a
professional who is trained in evaluating the accuracy of such
reports and treating someone accordingly, did not provide an
adequate basis for his diagnosis.  While there may have been
other reasons which led the Commissioner to discount Dr.
Hamill's opinions, they are not articulated in the
administrative decision itself, and, under Rogers, the Court
may not consider them.

Plaintiff has asked that the Court conclude that Dr.
Hamill's opinion be given controlling weight.  While it is
certainly entitled to substantial weight, it is ordinarily up
to the Commissioner to determine how much weight to afford such
an opinion.  Where, as here, the primary basis for declining to
uphold the Commissioner's decision is the Commissioner's
failure to articulate an adequate basis for rejecting Dr.
Hamill's opinion, the better course is to remand the case for
further consideration of these factors rather than for the
Court to award benefits.  Upon remand, the Commissioner is free
not only to re-evaluate the record in light of Rogers, but to
obtain additional medical opinions if that would be helpful.
The Court notes, in this regard, that the paper review done by
Dr. Williams came early in the case, that Dr. Semmelman's
subsequent review appears to refer to a number of factors which
have no support in the record, and that the medical advisor
called to testify at the hearing was not a mental health
specialist and therefore was unable to express an opinion as to
the most significant issues in the case.

Based upon the foregoing, it is recommended that the
plaintiff's Statement of Errors be sustained to the extent that

this case be remanded to the Commissioner for further
proceedings pursuant to 42 U.S.C. §405(g), sentence four.

<u>PROCEDURE ON OBJECTIONS</u>

If any party objects to this Report and Recommendation,
that party may, within ten (10) days of the date of this
Report, file and serve on all parties written objections to
those specific proposed findings or recommendations to which
objection is made, together with supporting authority for the
objection(s).  A judge of this Court shall make a <u>de novo</u>
determination of those portions of the report or specified
proposed findings or recommendations to which objection is
made.  Upon proper objections, a judge of this Court may
accept, reject, or modify, in whole or in part, the findings
or recommendations made herein, may receive further evidence
or may recommit this matter to the magistrate judge with
instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to
object to the Report and Recommendation will result in a
waiver of the right to have the district judge review the
Report and Recommendation <u>de novo</u>, and also operates as a
waiver of the right to appeal the decision of the District
Court adopting the Report and Recommendation.  <u>See Thomas v.
Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d
947 (6th Cir. 1981).


                         /s/ Terence P. Kemp
                         United States Magistrate Judge